# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

KAREN GAUTHIER,

    Plaintiff,

v.                          Case No. 3:17-cv-1188-J-32MCR

TARGET CORPORATION,

    Defendant.

_____

## **O R D E R**

This slip-and-fall case is before the Court on Plaintiff Karen Gauthier's Motion to Remand to State Court, (Doc. 8), to which Defendant Target Corporation responded in opposition. (Doc. 12).

## I. BACKGROUND

On November 21, 2015, Gauthier allegedly slipped and fell while shopping in a Target store in Jacksonville, Florida. (Doc. 2 ¶¶ 9–10). On September 19, 2017, Gauthier filed a one count Complaint alleging negligence against Target in the Fourth Judicial Circuit Court in Duval County, Florida. (Doc. 1-1 at 3). The Complaint asserts that it is an action for "damages in an amount in excess of $15,000.00, exclusive of interest and costs." (Doc. 2 ¶ 1). The Summons and Complaint were served on Target on September 26, 2017.

(Doc. 1-1 at 3). On October 24, 2017, Target removed the action to this Court pursuant to 28 U.S.C. § 1446(a), alleging diversity jurisdiction. (Doc. 1 at 1). Gauthier is a citizen of Indiana, and Target is incorporated in and has its principal place of business in Minnesota. (Doc. 1 at 1–2). On November 20, 2017, Gauthier filed a motion to remand the action to state court, asserting that jurisdiction does not exist because the amount in controversy is less than the required $75,000. (Doc. 8 at 2).

## II. ANALYSIS

In removed cases where the alleged jurisdictional basis is pursuant to 28 U.S.C. § 1332, the defendant bears the burden of proving (1) complete diversity of citizenship, and (2) an amount in controversy exceeding $75,000. § 1332. The jurisdictional requirements are determined at the time of removal. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010).[1] A defendant's plausible amount in controversy allegation within a notice of removal should be

---

[1] Many of the Eleventh Circuit's leading cases discussing the amount in controversy concern the Class Action Fairness Act ("CAFA"). Although CAFA has a different amount in controversy requirement than § 1332, courts use the same analysis pursuant to 28 U.S.C. § 1446 for both. See, e.g., Prestige Supplements, LLC v. Norax Supplements LLC, No. 8:17-CV-1938-T-30TBM, 2017 WL 4457088, at *1 (M.D. Fla. Oct. 6, 2017) (citing to multiple Eleventh Circuit CAFA cases in explaining the amount in controversy requirement for § 1332 cases). Additionally, in 2011 Congress amended § 1446. However, this amendment does not appear to alter the holdings of Pretka and its progeny. See Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir. 2014) (citing Pretka and Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) with approval after the 2011 amendments to § 1446).

2

accepted when not challenged by the plaintiff or questioned by the court. Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir. 2014) (quoting Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 553 (2014)). If the plaintiff contests, or the court questions, the amount in controversy, then the defendant must prove by a preponderance of the evidence that the jurisdictional threshold is met. § 1446(c)(2)(B); id. at 913.

When determining a contested amount in controversy, the court should first look to the complaint. Pretka, 608 F.3d at 752. When the complaint's allegations are indeterminate, the defendant must submit evidence to support his claim of jurisdiction. Id. at 754. When a case is removed in the first thirty days after service, the defendant is not restricted in the type of evidence he may submit. Id. at 754–55 ("[D]efendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal."). Further the court is free to make reasonable deductions, inferences, and other extrapolations from such evidence, and should rely upon its judicial experience and common sense. Id. at 754; Roe, 613 F.3d at 1062.

The amount in controversy is not a statement of how much the plaintiffs are likely to recover, nor proof of the amount the plaintiff will recover. Dudley, 778 F.3d at 913. "Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." Id. (quotations omitted). The plaintiffs likelihood of success is "largely irrelevant to the court's jurisdiction because the

pertinent question is what is <u>in controversy</u> in the case, not how much the plaintiffs are likely to recover." <u>Pretka</u>, 608 F.3d at 751 (emphasis in original) (quotations omitted). Thus, how a party values a particular claim is not dispositive. <u>See</u> <u>id.</u>

Here, defendants have demonstrated that more likely than not the amount in controversy exceeds $75,000. <u>See</u> § 1332; <u>Pretka</u>, 608 F.3d at 751; (Doc. 1 at 2). At the time of removal, the medical bills incurred and liens outstanding totaled $63,630.11. (Doc. 1 at 3; Doc. 1-2 at 1; Doc. 8 at 2). Although Gauthier argues that there is no evidence in the record of the need to recover future medical bills or lost wages, the Complaint states that Gauthier:

> [S]uffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and/or an aggravation of a previously existing condition. The losses are <u>either permanent or continuing, and the Plaintiff will suffer the losses in the future</u>.

(Doc. 2 ¶ 14) (emphasis added). Further, in her demand letter, Gauthier's counsel alleges that Gauthier "now has to live with pain medications, physical therapy and injections for the rest of her life. . . . There is no question that Ms. Gauthier . . . will continue to suffer more pain in the future." (Doc. 1-2). In its response to the motion to remand, Target states that Gauthier underwent "low back epidural steroid injections" ("ESI") on February 23, 2017. (Doc. 12 at 4). This is supported by the medical bills attached to the notice of removal that

4

show charges of $3,841.33 related to an ESI on February 23, 2017. (Doc. 1-4 at 12). Gauthier's contention that she will need such injections for the rest of her life further supports a finding that the amount in controversy exceeds $75,000. (See Doc. 1-2; Doc. 2 ¶ 14).

Both parties submitted documents from negotiations to support their contentions regarding the amount in controversy. (Docs. 1-2; 1-3; 8). This Court has previously discussed the value of settlement offers in determining whether the jurisdictional amount has been met:

> Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide specific information to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of his claim and are entitled to more weight. Courts may also consider a plaintiff's failure to argue that its settlement demand was unrealistic and that the amount in controversy is actually less than the jurisdictional amount.

Lutins v. State Farm Mut. Auto. Ins. Co., No. 3:10-CV-817-J-99MCR, 2010 WL 6790537, at *2 (M.D. Fla. Nov. 4, 2010) (Corrigan, J.) (citations and quotations omitted). Gauthier's initial settlement offer was for $1 million,[2] and its last offer prior to removal was for $175,000. (Doc. 1 at 2–3).[3] Target's counter-offers

---

[2] Although it is clear from the subsequent negotiations that the offer to settle for $1 million was puffing, the demand letter's description of past medical expenses and potential future expenses is valuable in assessing whether more than $75,000 is in controversy. See Lutins, 2010 WL 6790537, at *2; (Doc. 1-2).

[3] Gauthier's offer to settle for $74,500 is irrelevant to the Court's analysis because it occurred after removal. See Pretka, 608 F.3d at 751.

5

have hovered around $24,000.[4] (Doc. 8 at 11). Although these settlement offers are not conclusive in determining the amount in controversy, they are indicative of what the parties believe to be in controversy. See Lutins, 2010 WL 6790537, at *2. It appears that Gauthier believes that more than $75,000 is in controversy, and despite an opportunity to do so, she has put forth no stipulations or evidence to definitively say otherwise.[5] (See Doc. 1 at 2–3; Doc. 8).

Given the negotiations between the parties, the already incurred expenses of $63,630.11, and the reasonable likelihood of future losses and expenses, Target has shown it is more likely than not that the amount in controversy exceeds $75,000.

## III. CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Gauthier's Motion to Remand to State Court, (Doc. 8), is **DENIED**.

---

[4] "[I]t is especially difficult to use a defendant's settlement offer as evidence of a low amount in controversy because such an offer is likely to reflect the fact that the plaintiff may be unable to establish liability." Lutins, 2010 WL 6790537, at *2 n.3 (citing Pretka, 608 F.3d at 751).

[5] In her motion to remand, Gauthier does not state that she will seek less than $75,000 in damages; rather she contends that Target has failed to meet its burden in proving the jurisdictional amount. (Doc. 8 at 6).

6

2. The Case Management and Scheduling Order, (Doc. 13), will continue to govern the case.

**DONE AND ORDERED** in Jacksonville, Florida this 24th day of January, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record